# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:07-CV-477-RJC

| | |
|---|---|
| DAVID E. SIMPSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SERGEANT MICHAEL KANE; )<br>DEPUTY HEDLUND; DEPUTY )<br>MICHAEL; OFFICER SECREST; )<br>and OFFICER DENNIS, )<br>)<br>Defendants. )<br>) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on the "Motion For Summary Judgment Of Defendants Hedlund, Michael, Secrest and Dennis" (Document No. 39). Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion for summary judgment be granted.

## I. PROCEDURAL BACKGROUND

*Pro se* Plaintiff David E. Simpson ("Plaintiff" or "Simpson") initiated this action on November 5, 2007 by filing a "Form To Be Used By Prisoners In Filing A Complaint Under The Civil Rights Act, 42 U.S.C. § 1983" (Document No. 1)("Complaint"). The Complaint makes various allegations against the Starling Police Department, Union County Jail, Union County Jail Sheriff, as well as unidentified law enforcement deputies and/or officers. (Document No. 1). Plaintiff's allegations include several incidents of mistreatment and excessive force since being taken into custody on or about July 22, 2007, and seeks relief in the form of five million dollars ($5,000,000.00). Id.

On April 22, 2008, the Court dismissed the Starling Police Department and Union County Jail as improper defendants in this matter. (Document No. 10). By that same Order, the Court required the Union County Sheriff to provide the identity of the arresting officer(s) and Union County Jail officers involved in the incidents that form the basis of the Complaint. Id. On June 3, 2008, pursuant to the instructions of the Court, Plaintiff specifically identified Defendant Kane as his arresting officer on July 22, 2007, and alleged that Defendant Kane tackled and kicked him, exerting excessive force. (Document No. 14). The allegations against Defendant Kane are not subject to the instant motion and will not be addressed in detail in this Memorandum and Recommendation.

Also on June 3, 2008, Plaintiff specifically identified Defendants Hedlund, Michael, Secrest and Dennis as the deputies/detention officers he alleges maced, kicked, and/or scalded him on or about October 17, 2007. Id. On June 17, 2008, Sergeant Michael Kane, Officer Hedlund, Officer Michael, Officer Secrest, and Officer Dennis were added as defendants in this matter. (Document No. 15). Defendant Kane filed his Answer and Counterclaim for battery (Document No. 20) on July 8, 2008. The "Answer Of Defendants Hedlund, Michael, Secrest & Dennis To Plaintiff's Complaint" (Document No. 22) was filed on July 16, 2008.

The Court issued an Order on November 7, 2008, requiring that "[i]f any party wishes to file a dispositive motion, such a motion must be filed with this Court within sixty days of the filing of this Order." (Document No. 33). The "Motion For Summary Judgment Of Defendants Hedlund, Michael, Secrest, And Dennis" (Document No. 39) was timely filed on January 6, 2009, along with a memorandum and eight affidavits in support (Document Nos. 40-49). Defendant Kane has failed to file a dispositive motion and the time to do so has lapsed. Deputy Hedlund, Deputy Michael, Officer Secrest and Officer Dennis ("Defendants") assert in their motion that there are no genuine issues of material fact precluding summary judgment in their favor. (Document No. 39).

2

Specifically, Defendants contend that any use of force by them was "reasonable and necessary to maintain order and restore discipline," and that Plaintiff's allegations regarding conditions of confinement are not directed at these Defendants and are therefore not before the Court on this motion. (Document No. 40). Plaintiff filed a document captioned as a "Motion For Summary Judgment" (Document No. 51) on January 12, 2009, which the Court after review determined was actually a response to Defendant's motion for summary judgment, not an independent motion for summary judgment. (Document No. 54).

On January 15, 2009, Defendant Kane filed a response to Plaintiff's "motion" (Document No. 51) which he properly construed as a response to the other Defendants' motion for summary judgment. (Document No. 52). Defendant Kane gave notice that he was not filing substantive opposition to Plaintiff's "motion" (Document No. 51) because it seemed to exclusively target the other individual Defendants.

On January 28, 2009, the "Response By Defendants Hedlund, Michael, Secrest And Dennis To The Plaintiff's Motion For Summary Judgment" (Document No. 53) was filed; the Court construes this document as Defendants' reply in support of their "Motion For Summary Judgment..." (Document No. 39). Then on February 2, 2009, Plaintiff filed his "Response to the Defendants Attorney for a Summary Judgment" (Document No. 56) which will be construed by the Court as a Sur-reply to Defendants' motion for summary judgment.

This case was re-assigned from the Honorable Graham C. Mullen to the Honorable Robert J. Conrad, Jr. on August 17, 2010. On or about November 18, 2010, Judge Conrad requested the undersigned Magistrate Judge to review this matter and provide a recommendation on Defendants' pending motion for summary judgment.

## II. STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As this Court has previously explained,

> Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."

Boggan v. Bellsouth Telecomms., Inc., 86 F.Supp. 2d 545, 547 (W.D.N.C., 2000) (citations omitted).

The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

## III. DISCUSSION

After careful review of this matter, the undersigned concludes that there are no genuine issues of material fact as to Plaintiff's claims, and therefore, will recommend that summary judgment as to these Defendants is proper. In short, Plaintiff has failed to convince the undersigned that there is evidence such that a reasonable jury could return a verdict in his favor. Credible evidence, including affidavits filed in this action, support Defendants' actions as reasonable and lawful.

Plaintiff's allegations against Defendants relate to events on or about the night of October 16-17, 2007, when he alleges that the Defendants used excessive force against him causing him serious injury. (Document No. 1). The Complaint provides that Plaintiff had complained about a particular cell block he was placed in and requested to be moved. (Document No. 1, p.7). When transfer to another cell was refused, Plaintiff acknowledges that he "flood my cell so I can got out of that block." Id. Plaintiff then described the subsequent events as follows:

> the officers came and took me back up front, and I ask why are you putting me back in the drunk tank "instead of segreGation," the officer said this is where you belong. So **I kick on the door** of the drunk tank, so the officers open the door and sprayed out 2 cans of mase on me, and the "officers Begin to kick me on my side, "again." That morning "officer Wallace came by and seen the blood coming from my penis and He call the Nurse and the Nurse had me taken to Union County hospital."
> . . .
> When I was sprayed with 2 Can's of Maze This Last time They the officers wash me with Hot water and it burn will bad and the officer's did not give me the opportunity, to was the Maze off my head and body, and the officers Strap me in to a Chair and kept me in the Chair over 8 Hours....

(Document No. 1, pp.7, 9)(emphasis added).

Plaintiff's Court ordered response (Document No. 14) on June 3, 2008, re-asserted similar allegations with increased specificity.

> I can say these officers on the Report listed is the Ones that participated in the incident that occured that night of Oct 16, 2007, officer Hedlund and officer Micheal and officers Secrest officer Dennis it was one more officer. Open the Door to the Drunk Tank, officer Hedlund he ask me for my shoes that night and I said for what and then the officer Michael and officer Hedlund spray me a lot of Mace in my Face and I Fell to the Floor and They Begin to Kicking Me on my Side and I Could not see them, But I heard one the officer said Dont Kick him in the Face. and all I know that they Drug me to a Shower and turn on the Hot Water on me and it Burn my Body, and I Holler and al I could here these officers laughing. I could not see who was doing what to me But I kept asking to See a Nurse and they

5

> Refuse to let me see a Nurse I know they Strap Me in a Chair and then put a bag over my Head and I could not Breath. approx. 8 hours and then they put me Back in The Drunk tank that Morning of Oct 17, 2007 the Nurse had to send me to Union County Hospital Because I was Bleeding.

(Document No. 14, p.3). Plaintiff contends that the Defendants' use of excessive force damaged a cancerous tumor in his kidney and caused him to bleed. Id. at pp.2-3, 6. As such, Plaintiff asserts that his civil rights, pursuant to 42 U.S.C. § 1983, have been violated and seeks to recover five million dollars ($5,000,000.00) for alleged damages. (Document No. 1).

The Fourth Circuit has described the analysis of an excessive force claim brought under § 1983 as follows:

> ". . . [our] analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." . . . we recently joined the Fifth, Seventh, and Eleventh Circuits in holding that the Fourth Amendment "does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody." Instead, "we conclud[ed] that the excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." . . .
> To succeed on a claim of excessive force under the Due Process Clause of the Fourteenth Amendment, [Plaintiff] must show that Defendants "inflicted unnecessary and wanton pain and suffering." The proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

Taylor v. McDuffie, 155 F.3d 479, 482-83, (4th Cir. 1998) *abrogated on other grounds by* Wilkins v. Gaddy, 130 S.Ct. 1175 (2010)(citations omitted). In Wilkins, the Supreme Court "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim." Wilkins, 130 S.Ct. at 1178. "The 'core judicial inquiry,' we held, was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson v. McMillan,

503 U.S. 1, 7 (1992); and citing Whitley v. Albers, 475 U.S. 312, 319-321 (1986)). Therefore, according to relevant Fourth Circuit and Supreme Court precedents, in order for Simpson to prevail he must "prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" Wilkins, 130 S.Ct. at 1180.

The parties agree generally regarding the events of October 16-17, 2007, that Plaintiff demanded to be moved to a new cell, flooded a cell, refused to cooperate with detention officers, was sprayed twice with a spray, was put in a shower, and then restrained in a chair. The parties disagree on other important details – most significantly, whether Plaintiff was ever kicked, burned with hot water, or how long he was restrained in a chair. As to those details, Defendants deny Plaintiff's version of events.

Defendants contend that their use of force was reasonable and necessary to maintain order and restore discipline. (Document No. 40, p.20). Defendants argue that Plaintiff engaged in repeated acts of misconduct in the early morning hours of October 17, 2007, including

> refusal to allow other inmates to be placed in his cell; flooding his cell; removing his inmate identification bracelet; repeatedly kicking his cell door; refusal to obey lawful commands of the Jail Staff; abusing his intercom access in order to disrupt the operations of Master Control; threatening Jail Personnel with physical harm; and physically resisting the efforts of Detention Staff to control him.

Id. As Defendants point out, Plaintiff's own pleadings admit to his misconduct — flooding his cell, kicking the door, and refusing to hand over his shoes. See (Document No. 1, p.7; Document No. 14, p. 5). Moreover, Defendants' evidence also shows that Plaintiff's misconduct continued after their shift ended, at about 5:50 a.m. on October 17, 2007, and that Plaintiff again flooded a cell, "kicked the cell door violently and repeatedly with such force that he actually broke multiple heads on the

7

screws in the hinge to the door of his cell," and threatened to throw feces at any detention officers who came into contact with him. (Document No. 48).

The sworn affidavits of Defendants show that the force they employed against Plaintiff on October 17, 2007 was limited to spraying him twice with Oleoresin Capsicum spray ("O.C. Spray"), handcuffing him, escorting him to a shower to decontaminate his face of the O.C. Spray with lukewarm water, and placing him under observation in a restraint chair for two hours and twenty-eight minutes. (Document No. 40, p.41; see also, Document Nos. 44-47). The affidavits of the Defendants specifically deny that they ever beat, punched or kicked the Plaintiff. Id. Defendants argue that not only was the force used necessary to maintain order and restore discipline, but it was also necessary to prevent Plaintiff from injuring himself. (Document No. 40, pp.20-21).

Defendants have also presented the affidavit of Deputy A. Wallace who came on duty at the Union County Jail on the morning of October 17, 2007. (Document No. 42). Deputy Wallace declared, *inter alia*, that he confirmed that Plaintiff was passing dark-colored urine and after consulting with the Jail Nurse sent Plaintiff to Carolinas Medical Center - Union ("CMC-Union"). Id. Deputy Wallace further declared in his affidavit that Plaintiff never stated that Defendants had kicked or beaten him. Id.

As additional evidence, Defendants rely on seventy-seven pages of Plaintiff's certified medical records from CMC-Union which they contend undermine Plaintiff's claims. (Document Nos. 41, 41-2). The medical records show that Plaintiff was treated at approximately 8:40 a.m. on October 17, 2007, in the emergency department of CMC-Union for a chief complaint of blood in urine. (Document Nos. 41-8, 38-4). The medical records further indicate that Plaintiff was diagnosed with a urinary tract infection, Hematuria (blood in the urine) and Prostatitis (infection of the prostate gland). (Document Nos. 41-8, 41-12). Education materials purportedly provided to the

8

Plaintiff describe possible causes of Hematuria as including: injury, usually bruising to the kidney or bladder; urinary tract infections; kidney stones; tumors; high-fevers; and heavy exercise. Id. A symptom of Prostatitis is blood or pus in urine. Id. Nothing in the records presented by Defendants, nor any evidence from Plaintiff, shows that Plaintiff mentioned the alleged abuse at the jail to his medical providers at CMC-Union. Furthermore, the observations in the medical records of his condition are completely devoid of any evidence of cuts, bruises, burn wounds, or any other physical evidence supporting Plaintiff's claims. (Document No. 41). Although Plaintiff asserts that he has scars on his face and back from the water that burned him, there is no evidence that any burn wound was observed or treated at the hospital, or that Plaintiff ever complained of such injury on either part of his body. (Document No. 56).

Defendants, citing the sworn affidavit of Nurse Practitioner W. Wachowiak, contend that Plaintiff's repeated kicking of the cell door was a form of heavy exertion that could have led to blood in his urine, and that he was also diagnosed with naturally-arising medical conditions, urinary tract infection, Prostatitis, and Hematuria, that could have caused there to be blood in his urine. (Document No. 43; Document No. 40, p.23). In addition, if it were indeed later revealed that Plaintiff had a tumor in his kidney, as he suggests, according to the patient education materials, that is another possible source of blood in urine. (Document No. 41-8).

In response to Defendants' motion for summary judgment, Plaintiff first suggests that there is some sort of cover-up regarding the underlying incidents and that people are lying. (Document No. 51, p.1, 3-4). Plaintiff offers no evidence to support his contention. Next, Plaintiff asserts that he never kicked any doors. Id. pp. 1, 3. However, Plaintiff offers no explanation for why his Complaint asserts the opposite - "So I kick on the door of the drunk tank." (Document No. 1, p.7).

Plaintiff's theory of his injury seems to be that he was repeatedly kicked by one or more Defendants causing a cancerous tumor to burst inside his kidney. However, again, Plaintiff has offered no evidence, in the form of medical records, affidavits, or otherwise, to support his claim. Moreover, to the extent he suggests he is relying on a doctor's opinion, there is no explanation as to the source of that information – when or where that happened, who the doctor was, or what exactly was said. As Defendants note, the medical records in evidence suggest several potential naturally occurring causes of Plaintiff's condition. Nothing in evidence supports a burst tumor, or that Plaintiff was subjected to excessive force.

## IV. CONCLUSION

After careful review of the pleadings and evidence, including multiple sworn affidavits, the undersigned finds that Plaintiff's allegations against Defendants Hedlund, Michael, Secrest, and Dennis are not credible. Defendants, on the other hand, have persuasively shown a lack of evidence to support Plaintiff's case, in response to which Plaintiff has failed to convince the undersigned that triable issues do exist – such that a reasonable jury could return a verdict for Plaintiff. See Boggan v. Bellsouth Telecomms., Inc., 86 F.Supp. 2d 545, 547 (W.D.N.C., 2000). Plaintiff has been unable to "set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

In addition, the undersigned is satisfied that pursuant to Wilkins v. Gaddy, 130 S.Ct. 1175 (2010), the force applied by these Defendants on October 17, 2007, was applied "in a good-faith effort to maintain or restore discipline," and not "maliciously and sadistically to cause harm."

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the "Motion For Summary Judgment Of Defendants Hedlund, Michael, Secrest and Dennis" (Document No. 39) be **GRANTED**.

10

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum And Recommendation to counsel for Defendants, the *pro se* Plaintiff, and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: December 8, 2010

David C. Keesler
United States Magistrate Judge